O’NIELL, Chief Justice.
 

 Page Mason Himel is suing Mrs. Clara Himel Connely for a third of $8,000, on a written instrument dated June 11, 1918, signed by Mrs. Connely and declaring that she received on that day from her mother, Mrs. Lavinia Barton Himel, the sum of $8,000 as an advance on her portion as an heir, and subject to collation. The plaintiff is a grandson and is one of the three forced heirs of Mrs. Himel.
 

 The defendant filed a plea of res judicata and a plea of prescription of five years. The pleas were argued and submitted without the offering of any evidence except the judgment on which the plea of res judicata was founded, and the petition on which the judgment was rendered. The judge maintained the plea of res judicata and dismissed the plaintiff’s suit. He is appealing from the decision.
 

 The outlines of the case are given in the pleadings and briefs, and are not disputed. Mrs. Lavinia Barton Himel died on December 14, 1922, leaving three forced heirs, namely, (1) Page Mason Himel, a grandson, who is the plaintiff in this suit, (2) Mrs. Clara Himel Connely, a daughter, who is the defendant, and (3) Mrs. Marguerite Dowdoin Colmore, a granddaughter, who is not a party to the suit. Page Mason Himel was the only child of Clairville Himel, who was the only son of Mrs. Lavinia Barton Himel, and who died in March, 1918. Page Mason Himel therefore inherited a third of the estate of his grandmother by representation. Mrs. Marguerite Dowdoin Col-more also inherited a third of the estate by representation. She was the only child of Mrs. Flora Himel Dowdoin, who was a daughter of Mrs. Lavinia Barton Himel, and who died before her mother died.
 

 
 *774
 
 At the time of the death of Mrs. Lavinia Barton Himei she owned three mortgage notes amounting to $15,625, signed by her son, Clairville Himei, and representing a part of the price for which she had sold her plantation to him. The notes were in the possession of Mrs. Olive Dodd Himei, widow of Clairville Himei, and natural tutrix of her child, Page Mason Himei. He was six years old when his father died, and less than eleven when his grandmother died. The dative-testamentary executor of the estate of Mrs. Lavinia Barton Himei sued Mrs. Olive Dodd Himei, as tutrix of Page Mason Himei, for possession of the three mortgage notes. She pleaded that the notes were paid, and, in the alternative, that the debt, if not paid, was prescribed. The court decided that the notes were not paid, and, without deciding whether the debt was prescribed, ordered that the notes should be delivered to the executor. On appeal the judgment was affirmed. Sigur Martin, Executor, v. Mrs. Olive Dodd Himei, Tutrix, 174 La. 281, 140 So. 478. The decision was rendered on February 29, 1932. On December 10, 1931, Page Mason Himei, being then nineteen years and nearly nine months old, was emancipated by a judicial decree. On October 27, 1932, a petition signed by Sigur Martin, Executor, and Mrs. Marguerite Dowdoin Colmore, and Page Mason Himei and Mrs¡ Clara Himei Connely, was filed in the Succession of Mrs. Lavinia Barton Himei,. in the district court in St. James Parish, in which petition the executor and the three heirs of the deceased averred: (1) That there was no necessity for further administration by the executor, (2) that the only assets of the estate were the three mortgage notes amounting to $15,625, “the ownership of which notes has [had] been in litigation between the executor and one of the heirs since the appointment of the dative testamentary executor”, (3) that a compromise agreement among the heirs has [had] been effected “whereby an end has [had] been put to the said litigation to the complete satisfaction of all heirs”, and (4) that the executor, having no assets to administer upon, and having had no funds in his hands, had no accounting to make. The prayer of the petition was simply this: “that 'the said Sigur Martin be dismissed from his trust as dative testamentary executor of this estate, and that his bond as such be cancelled.” There was also the stereotyped prayer “for all necessary orders and for all general and equitable relief.”
 

 In response to that petition the judge rendered a decree in which he did nothing more than he was asked to do; that is, to - discharge the executor and order his bond cancelled. To show how ■ limited in its scope was the consent judgment .that was rendered we publish a complete copy of it here viz.:
 

 “This cause came before the court upon the petition of the dative testamentary executor, joined by all the heirs of this estate, that the administration of this estate be closed, the executor discharged and his bond cancelled, and it having been shown to the court that the executor has never, had possession of any funds or property belonging to the estate, and that all the heirs are satisfied that the executor, be discharged and his bond cancelled. -. .
 

 
 *776
 
 “It is therefore ordered, adjudged and decreed that Sigur Martin, dative testamentary executor of this estate, be and he is hereby discharged and relieved of his trust as such executor, and that his bond as such be and it is hereby discharged and can-celled.”
 

 A judgment obtained by the consent of all of the parties to a suit gets its binding force and effect from the consent which the parties give, rather than from the doctrine of res judicata. Girod’s Legatees v. Pargoud, 11 La.Ann. 329; Greenwood v. City of New Orleans, 12 La.Ann. 426, cited with approval in Dunn v. Pipes, 20 La.Ann. 276.
 

 As far as the evidence in this case goes, all that was compromised or settled among the heirs of Mrs. Lavinia Barton Himel, in the suit in which they asked for and obtained the judgment which is relied upon now to support the plea of res judicata, was the litigation over the three mortgage notes amounting to $15,625. It was so alleged in the petition of the executor and the three heirs, asking for the discharge of the executor, thus:
 

 “That the only assets of this estate were three mortgage notes for the sum of $5,208.33% each, the ownership of which notes has been in litigation between the executor and one of the heirs since the appointment of the dative testamentary executor.
 

 “That a compromise has been effected among the heirs whereby an end has been put to the said litigation to the complete satisfaction of all heirs.
 

 “That said executor, having had no assets to administer upon, and having had no funds in his hands, has no accounting to make.”
 

 . The declaration in the second paragraph which we have quoted, that a compromise was effected by which the heirs put an end “to the said litigation”, has reference to the litigation over the ownership of the three mortgage notes, referred to in the first paragraph which we have quoted. It was not alleged that any other compromise or settlement was made, such as might estop Page Mason Himel from bringing this suit.
 

 It is alleged by the plaintiff in this case that the debt of $8,000 which Mrs. Connely owed to the succession of her mother appeared on the executor’s account and was acknowledged by Mrs. Connely; but no reference was made to that debt in the judgment which is relied upon in this case to support the plea of res judicata, or in the petition on which the judgment was rendered. The judgment therefore cannot serve as a basis for the plea of res judicata in bar of this suit to collect the plaintiff’s share of the alleged debt of $8,000.
 

 “The authority of the thing adjudged takes place only with respect to what was the object of the judgment.” Rev.Civ.Code, art. 2286.
 

 “The doctrine of the common law courts that res judicata includes not only everything pleaded in a cause, but even that which might have been pleaded, does not obtain generally under our system.” Wood
 
 *778
 
 cock v. Baldwin, 110 La. 270, page 275, 34 So. 440, page 441, citing State v. American Sugar Refining Co., 108 La. 603, 32 So. 965. See also Succession of Durnford, 1 La.Ann. 92; Kellam v. Rippey, 3 La.Ann. 202 ; Cantrelle v. Roman Catholic Congregation of St. James, 16 La.Ann. 442; Slocomb v. DeLizardi, 21 La.Ann. 355, 99 Am.Dec. 740; De St. Romes v. Carondelet Canal & Navigation Co., 24 La.Ann. 331; McCaffrey v. Benson, 40 La.Ann. 10, 3 So. 393; Semple v. Scarborough, 44 La.Ann. 257, 10 So. 860; Scovel v. Levy’s Heirs, 118 La. 982, 43 So. 642; Tennent v. Caffrey, 163 La. 976, 113 So. 167; State v. City of New Orleans, 169 La. 365, 125 So. 273; Cornish v. Chaney, 177 La. 10, 147 So. 363; Hope v. Madison, 194 La. 337, 193 So. 666; La.Law Rev., Vol. 2, No. 3, p. 491, “Res Judicata”, comment by Claude O’Quin.
 

 There are decisions recognizing three exceptions to the general rule which we have quoted, but the exceptions are not pertinent to this case. One of the exceptions that was made is that in a petitory action the parties to the suit must assert whatever titles they have, and not hold back any claim for future litigation. Shaffer v. Scuddy, 14 La.Ann. 575; Heirs of Brigot’s Heirs v. Brigot, 49 La.Ann. 1428, 22 So. 641; Howcott v. Pettit, 106 La. 530, 31 So. 61; Lindquist v. Maurepas Land & Lumber Co., 112 La. 1030, 36 So. 843; Gajan v. Patout & Burguieres, 135 La. 156, 65 So. 17; Succession of Whitner, 165 La. 769, 116 So. 180. Another exception to the general rule has been made in suits for a partition or division of real estate. Choppin v. Union National Bank, 47 La.Ann. 660, 17 So. 201; Wells v. Files, 136 La. 125, 66 So. 749; Samuels v. Parsons, 146 La. 262, 83 So. 548. And the third exception to the general rule has been made in suits for an injunction against the execution of a judgment, or of a writ of seizure and sale in executory process. McMicken v. Morgan, 9 La.Ann. 208; Trescott v. Lewis, 12 La.Ann. 197; Fluker v. Davis, 12 La.Ann. 613; Porter v. Morere, 30 La.Ann. 230; Brooks v. Magee, 126 La. 388, 52 So. 551; Schwartz v. Siekmann, 136 La. 177, 66 So. 770. But, in injunction suits, the right of the head of a family to claim the homestead exemption is not waived by his enjoining the sale on other grounds without claiming the homestead exemption. Lee v. Cooper, 155 La. 143, 98 So. 869. The present suit does not come within any of the exceptions to the general rule, that the doctrine of the common-law courts, that res judicata includes not only everything pleaded in a cause but even that which might have been pleaded, does not prevail in Louisiana.
 

 The plaintiff alleges in his petition that he was not informed until January, 1938, of the fact that Mrs. Connely had received the $8,000 from her mother subject to collation and that she had not accounted for it in the succession. He alleges also, however, that, upon his receiving this information, his attorney examined the record in the proceedings entitled Succession of Mrs. Lavinia Barton Himel and found that it was declared in the succession proceedings, in October, 1926, that Mrs. Connely admitted that she had received the $8,000 subject to collation. If we add this debt of $8,000 to the $15,625 represented by the mortgage notes which the succession of the
 
 *780
 
 plaintiff’s father owed to the estate of Mrs. Lavinia Barton Himel, we see that the value of the estate was $23,625; and, as Mrs. Connely was entitled to one-third of that sum, or $7,875, as her third of the estate, she was obliged to pay only $125 to the succession, or $41.66 to each of the two coheirs, in order to settle the debt of $8,000 which she was obliged to collate. It is highly probable, therefore, that the debt of $8,000 was accounted for and compensated and extinguished at the'time when the three heirs petitioned the judge to discharge the executor. But there is no proof in the record in this suit that the debt of $8,000 which Mrs. Connely owed to the succession of her mother was settled in that way. If it was so settled, the defendant in this suit should set up the fact in answer to the suit, or in some appropriate plea, and offer some proof of the fact.
 

 It is not contended by the defendant that the plaintiff has no right of action because collation is made only to the succession of the one who advanced the money. It is not contended that the plaintiff lost his right to demand collation by consenting to the discharging of the executor and the closing of the succession. Such a plea might deserve consideration, in the light of the provisions of the Civil Code on the subject, particularly article 1242 — tnotwithstanding it was decided in the case of Benoit v. Benoit’s Heirs, reported in 3 La. 223 and 8 La. 228, that the daughter of the deceased had a right of action to demand collation of the children of her deceased half-sister, their father having given away everything he had and having left no succession to open or administer. On this question we express no opinion because it is not an issue in the case.
 

 Thei record leaves some .doubt whether the judge overruled the plea of prescription of five years before he maintained the plea of res judicata. The attorney for the defendant and the attorneys for the plaintiff both ask that we dispose of the plea of prescription if we do not maintain the plea of res judicata. Considering that a plea of prescription is one which may be filed originally in an appellate court, we are warranted in considering and disposing of the plea in this case, especially at the request of both parties, even though the record does not show that the judge of the district court passed upon the plea. It is based upon the provision in article 3542 of the Civil Code that actions for a reduction of an excessive donation are barred by the prescription of five years. But that has reference to donations which exceed the disposable portion, and not to donations which are merely subject to collation. There is a marked distinction between a suit to reduce an excessive donation to the disposable portion and a suit for collation— as we pointed out in Jordan v. Filmore, 167 La. 725, 120 So. 275. We do not know of any case in which the prescription of five years was applied to a suit for collation. The Succession of Smith, 182 La. 389, 162 So. 21, cited by the defendant, is authority for the proposition merely that a suit by a forced heir against legatees to' annul an attempt of the ancestor to disinherit the forced heir is a suit to reduce an excessive donation to the disposable portion, and is
 
 *782
 
 therefore subject to the prescription of five years, under article 3542 of the Civil Code. In the Succession of Waterman, 183 La. 1006, 165 So. 182, also cited by the defendant, it was not decided that the prescription of five years was applicable to a suit for collation. On the contrary, it was said that the record did not show what prescription was pleaded; and in fact the plea was overruled. The declaration in that case, that the only prescription applicable to a suit for collation was that of five years, and that that period had not elapsed, was, of course, not a decision of anything, because the parties were taking it for granted — and not disputing — that if five years had elapsed the action would be barred by prescription.
 

 In the Succession of Skipwith, 15 La.Ann. 209, it was held that a suit to compel an heir to collate a debt due to his father could not be barred by prescription accruing after the opening of the succession of the father. In the Succession of Cucullu, 9 La.Ann. 96, it was held that an heir who took the benefit of the bankrupt act was not thereby relieved of his obligation to collate in the succession of his father advances made to him by the father. And in the Succession of Bougere, 28 La.Ann. 743, it was held that, on the principle announced in the Succession of Cucullu, the obligation of an heir to collate a debt due to the succession of his father could not be released by effect of prescription accruing after the death of the father. On that subject, the court said on page 748 of the report in 28 La.Ann: “It has been held that a discharge under the bankrupt law does not release an heir from the obligation to collate. Succession of Cucullu, 9 La.Ann. 96. Upon the same principle the heir can not plead against collation that the debt which he owes is prescribed.” An action to compel collation is like an action for partition of a succession, in that the obligation o: an heir to collate is subject to being offset or •compensated by his interest as an heir in the succession. It is not necessary to decide whether a suit to compel collation is subject to the prescription of 10 years under Article 3544 of the Civil Code, which declares: “In general, all personal actions, except those before enumerated, are prescribed by ten years.” This suit was brought within ten years — in fact only' seven years — after the plaintiff was emancipated. It is sufficient therefore to say that the prescription of five years, by which, according to article 3542 of the Civil Code, an action to reduce an excessive donation to the disposable portion is barred, is not applicable to an action to compel collation. That is the only prescription that is pleaded in this case.
 

 The judgment appealed from is annulled; the-plea of res judicata and the plea of prescription of five years are overruled; and the case is ordered remanded to the district court for further proceedings consistent with the opinon which we have rendered. The defendant is to pay the costs of this appeal. All other costs are to abide the final disposition of the case.