CHRIS T. BARNETTE, Judge pro tern.
This is a suit to have two purported deeds •to real property declared null and void and dhe property returned to the successions of •the purported vendors for division among .all heirs according to law. In the alternative plaintiffs pray for collation. They also pray for an accounting of proceeds from the property; for an inventory and for letters of administration. The defendants are two ■children of Louis Robert and Ulyssia Landry Webre and the plaintiffs, the other children •or their representatives.
A supplemental and amended petition was filed but disallowed and defendants’ plea •of prescription as to one of the deeds in question was sustained, from which judg■ment plaintiffs have appealed. The defendants have answered the appeal pleading for affirmation, or in the alternative if the plea of five years prescription under LSA-C.C. art. 3542 cannot be maintained, that it be maintained under LSA-C.C. art. 3544 which provides ten years prescription for personal actions.
On February 15, 1938, Louis Robert Webre executed a purported sale of certain property in St. John the Baptist Parish to defendants Septime Raymond Webre and Ada Webre, wife of Henry Boudreaux, for the stated consideration of $1,200.00, payable $600.00 cash and the balance represented by note of $600.00 payable in one year, secured by vendor’s lien and mortgage. Plaintiffs allege the value of the property at the time of sale to have been over $20,000.00
On the same date, February 15, 1938, Mrs. Maria Ulyssia Landry, wife of Louis Robert Webre, executed a purported sale of certain other property in St. John the Baptist Parish to defendants Septime Raymond Webre and Ada Webre, wife of Henry Boudreaux, for the stated consideration of $2,600.00, payable $1,600.00 cash and the balance represented by note of $1,000.00 payable in one year, secured by vendor’s lien and mortgage. Plaintiffs have alleged this property to have been worth more than $12,000.00.
Louis Robert Webre died September 25, 1940, and Ulyssia Landry Webre died November 10, 1947. This suit was filed November 6, 1950, and a notice of lis pendens recorded. After much delay, joinder and substitution of parties plaintiff and a change of attorneys for plaintiffs, the defendants filed a plea of prescription September 21, 1962, having previously filed an answer in 1960. On September 26, 1962, plaintiffs filed a supplemental and amended petition in which they sought to allege:
“In the alternative, and only in the event that it should be found that the vendors of the two sales, dated February 15, 1938, referred to in Paragraphs 6 and 8 of the original petition herein, received the recited consideration, or other valuable consideration of an equivalent amount, then in such event petitioners aver that said transfers constitute a prohibited advantage bestowed at a very low price in contravention of the provisions of Article 1248 of the Revised Civil Code of Louisiana, which transfers are nevertheless subject to collation.”
*51 The issue of prescription and objection to the supplemental petition were heard and judgment was rendered and filed March 28, 1963, sustaining the plea of prescription of five years under Article 3542 of the Civil Code of Louisiana insofar only as the action applied to the conveyance from Louis Robert Webre. The plea was overruled as it applied to the property conveyed by Mrs. Webre. The supplemental and amended petition was disallowed.
The plaintiffs argue that the purported deeds are simulated conveyances and were in fact donations in disguise, null and void, and that the right of action to have them set aside is not prescriptible.
Plaintiffs stress that their suit is not primarily an action for collation, but an action to annul the two disputed transfers and to have themselves recognized as heirs of decedents and co-owners with defendants of the property in question. It is only in the alternative that they seek collation of the value of the property.
In support of their primary contention, plaintiffs assert that absolute nullities are not subject to prescription and that the deeds in question fall within that category. There are abundant authorities in our jurisprudence that absolute nullities are impre-scriptible, Byrd v. Byrd, 230 La. 260, 88 So.2d 214; Labarre v. Rateau, 210 La. 34, 26 So.2d 279; Litton v. Stephens, 187 La. 918, 175 So. 619 and Heirs of Provost v. Provost, 13 La.Ann. 574. Plaintiffs rely strongly on the Labarre case.
We find no fault with the principle enunciated in the above-cited cases, but we do not agree with plaintiffs’ assertion that the instruments under attack fall within the category of absolute nullities. The Labarre case, upon which plaintiffs rely for support of their primary action, upon a casual reading, would seem to settle the issue here, but it is clearly distinguishable from the instant case.
In the Labarre case we find coheirs attacking an 1891 purported deed to two favored heirs more than thirty years after its. execution and more than ten years after the deaths of the grantors. The facts there are strikingly similar to those in the present case. Plaintiffs alleged in the Labarre case-“that the act of sale of January 16, 1891, was an absolute nullity for the following reasons : (1) It was a donation in disguise, intended to prefer Gustave and Nelson La-barre over the other children. (2) No-consideration was given by the vendees.. (3) If there was consideration for the act it was not of a serious nature nor equivalent to the value of the property. (4) The act was an attempted donation omnium bono-rum.” Only in the failure of plaintiffs in-the instant case to allege substantially as in (4) above that the deed was an attempted donation omnium bonorum, do the two cases differ. But this is a vital difference and requires us to disregard the Labarre case as authority for support of plaintiffs’ contention.
None of the first three causes of action alleged in the Labarre case are absolute nullities, LSA-C.C. art. 1502. The decision of the Supreme Court rested upon the fourth alleged cause. Donations om-nium bonorum are absolute nullities and imprescriptible. LSA-C.C. art. 1497 provides :
“The donation inter vivos shall in no case divest the donor of all his property; he must reserve to himself enough for subsistence; if he does not do it, the donation is null for the whole.”
The term omnium bonorum is not used in the foregoing article of the Code, but its meaning is clear. The term means “of all goods and effects.” It “is applied to describe a donation which divests the donor of all his property and does not leave him with enough for his subsistence.” 67 C.J.S., p. 492, citing Maxwell v. Maxwell, 180 La. 35, 156 So. 166 and Snowden v. Cruse, 152 La. 144, 92 So. 764.
We have searched the pleadings in this case in vain to find some allegation *52 which might he interpreted as pleading the nullity of omnium bonorum (LSA-C.C. art. 1497) which would bring this case under the authority of the Labarre case. Finding no such allegation, we have no right to assume that the deeds in question, alleged to be donations in disguise, were stricken with such nullity.
 In the petition we find the allegation that the purported acts of sale were “pure simulation” and “were ‘fake’ sales * * * made purely for the purposes of convenience * * In their brief and argument before this Court, plaintiffs have taken the firm position that the acts in question were donations in disguise, and it is in this meaning that they have attacked them as simulated. There is a distinction to be made between a pure simulation denounced by LSA-C.C. art. 2239 and an instrument which purports on its face to be one thing but is in fact something else in disguise. A pure simulation is of no effect whatever; it is as though it were never done; it has no meaning; it conveys nothing. If the acts in question were pure simulations, that is, not intended by the parties to be a conveyance by deed or otherwise, the property in question has never left the purported grantors and hence remains in the successions of the decedents for the benefit of all heirs.
This was not the state of facts in the Labarre case, nor do plaintiffs assert it in this case. No mention has been made of this distinction in argument or brief, and we are of the opinion that it was mere coincidence that the term “pure simulation” was used in plaintiffs’ petition. The key to this question is the intent of the parties. There is no allegation in the petition from which we can assume that plaintiffs had any other idea except that the grantors intended to divest themselves of the property in question. They allege that the purported sales were “ * * * in fraud of their rights * * They could only have been defrauded by the passing of the property from the successions of decedents. This negates the idea of a pure simulation where nothing passes. Nothing in plaintiffs’ argument or brief contradicts this interpretation we have placed on their pleadings. The most that can be said of this allegation is that it is a conclusion of law and not supported by allegation of facts. We do not find it necessary, therefore, to decide this question.
 The plaintiffs have pleaded simulation in its broader sense, meaning that the acts in question were not what they purported to be on their face but donations in disguise. If they were donations in disguise, the property passed from the donors and can form no part of their successions unless brought back into the mass through collation. It is our opinion therefore that plaintiffs primary action cannot be maintained.
This brings us to the consideration of the alternative or secondary question of collation. The plaintiffs have alleged that the deeds are simulations and are in fact donations to favored heirs. If their allegation is supported in fact and the deeds are simulated conveyances, they then must be construed as donations and an attempt to favor two children over other heirs. This would support a demand for collation unless the action is prescribed. Defendants have pleaded prescription of five years under LSA-C.C. art. 3542 and ten years under LSA-C.C. art. 3544.
The trial court sustained the prescription of five years (Article 3542) as applied to the deed (or donation in disguise) by Louis Robert Webre to defendants. Since the suit was filed within five years of the death of grantor Ulyssia Landry Webre, the plea was overruled as related to the deed (or donation) by her. This evidently was done through oversight since the plea filed related only to the conveyance from Louis Robert Webre.
It is our opinion that the trial judge was in error in sustaining the plea of five years prescription under Article 3542, but he should have sustained the plea of ten years *53 prescription under Article 3544. Himel v. Connely, 195 La. 769, 197 So. 424; In re Andrus, 221 La. 996, 60 So.2d 899.
The Supreme Court said in the Andrus case:
* * *
"The decision on this plea depends on whether or not an action for collation prescribes by five years under Article 3542 of the LSA-Civil Code. In the case of Naudon v. Mauvezin [194 La. 739, 194 So. 766] (supra), it was held that the prescription provided in that article applied to actions for collation whereas in the case of Himel v. Connely, 195 La. 769, 197 So. 424, decided a few months later, it was held that it did not. This apparent discrepancy was noted by the Court when the case of Roach v. Roach, 213 La. 746, 35 So.2d 597, was under consideration but it was found unnecessary to attempt to reconcile the two different rulings as the five year period on which the plea rested in that case had not yet lapsed. In the present case it has and therefore the issue has to be decided.
“Article 3542 of the LSA-Civil Code which provides the prescription that is invoked, makes no mention of or reference to actions for collation. It does provide, as we have already seen, that actions for the reduction of excessive donations are included within its terms and the only way on which it might be said to include actions for collation also would be by postulating that such actions are assimilable to actions for the reduction of excessive donations. But there is a difference between the two actions. The distinction was drawn in the case of Jordan v. Filmore, 167 La. 725, 120 So. 275, 277, where the court stated:
“ ‘The difference between the right to demand collation and the right to demand a reduction of an excessive donation or legacy to the disposable portion is that collation can be demanded only from a co-heir, but does not depend upon the extent of the inequality in the disposition of the ancestor’s estate; whereas the right to demand a reduction of an excessive donation or legacy to the disposable portion may be demanded from any donee or legatee — whether he be an heir or a stranger- — but it can be demanded only when — and to the extent that — the donation or legacy exceeds the disposable portion.’
“It was on the basis of that distinction that the court held in Himel v. Connely, supra, that the prescription under Article 3542, LSA-C.C., does not apply to actions for collation, which was correct. The ruling in Naudon v. Mauvezin, supra,’ was overruled sub silentio by the ruling in that case and therefore should not be followed. The plea urged was incorrectly sustained by the trial judge. It has to be overruled.”

The Himel and Andrus cases, supra, definitely hold that the prescription of five years under LSA-C.C. art. 3542 does not apply to collations, but they fail to say what prescription, if any, does apply. The facts in each case were such that the court did not find this decision to be necessary.
Prescription of the right to demand collation is ably discussed in the following Law Review articles: Louisiana Law Review, Vol. Ill, p. 460; Tulane Law Review, Vol. 27, p. 241, and Loyola Law Review, Vol. IX, p. 112. These articles assert that the jurisprudence of the state has never squarely settled the question. Neither have we been able to find any such decision.
The Louisiana Law Review article (1941) raises the point that because of the peculiar nature of the action of collation, it should be removed from the sphere of Article 3544 of the Civil Code, referred to as *54 a “catch all” prescription of ten years. It is reasoned that since collation is an incident to the partitioning of the succession, the right to demand it would exist as long as the succession remains open and subject to partition. This, the article states, is the French rule (citing authority).
The Tulane Law Review article (1953) discusses the foregoing so called French rule and concludes with approval of the application of the ten year prescription under Article 3544 as “suggested” in the Him-el case, taking the position that collation is a personal action. This article interprets Article 3544 “as a ‘catch all’ provision to cover those personal actions for which there is no specific prescriptive period.”
The Loyola Law Review article (1957-58) foresees the possibility that the adoption of the ten year prescriptive rule under Article 3544, pretermitted in the Himel case might be adopted when the court is confronted with the requisite factual situation. Such a conclusion, it says, is not without merit. The author does not, however, fail to consider the opposing view and recognizes the logic “that the right to compel collation could be considered to exist co-extensively with the life of the succession.” In conclusion the author says:
“The ultimate decision as to how long collation can be demanded will probably result from a weighing of the effects of the prescription of ten years as against no prescription. While it is virtually impossible to fashion a remedy that will effect the most equitable result in every case, the solution which more generally tends toward justice should be adopted where there is uncertainty and ambiguity.”
* * *
Article 3544 of LSA-C.C. reads as follows:
“In general, all personal actions, except those before enumerated, are prescribed by ten years.”
and it is our opinion that the right to demand collation is a personal right within-the terms of that article. It is an action, which a coheir may or may not, according-as his personal desires dictate, elect to-assert. The closeness of relationship, love and affection for the favored coheir, his-peculiar need and many other strictly personal considerations may influence his decision. It is clearly a personal right and the prescription of ten years as provided in: Article 3544 must apply.
Plaintiffs have alleged that the conveyance under attack did not become known-to them until November 13, 1940, a date within ten years of the filing of suit. In: the case of Naudon v. Mauvezin, 194 La. 739, 194 So. 766, (which apparently has-been overruled as it applies the five year prescription to collation under LSA-C.C.. art. 3542), the Supreme Court said:
«* * * ^ claim for collation, or reduction of an excessive donation inter vivos, is prescribed by Article 3542 of the Revised Civil Code by the lapse of five years from the death of the donor; * * *.”
In Taylor v. Brown, 223 La. 641, 66-So.2d 578, the Supreme Court, McCaleb, J. said: “* * * Obviously, collation cannot be required until the succession to which it belongs is opened, * * *.” The succession becomes open by death. LSA-C.C. art. 934.
It is our opinion that prescription-of the claim for collation therefore began to run from the date of death of the donor, Louis Robert Webre, September 25, 1940, and is not to be computed from the date when the act became known to plaintiffs.
Since the donor died on September 25, 1940, and suit was filed and collation claimed on November 6, 1950, the plea of prescription of ten years must be sustained.
The only remaining issue is the-allowance of the supplemental and amended *55 petition submitted for filing September 26, 1962. The tendered amendment, quoted above, does not in our opinion raise new issues, and we find no abuse of discretion of the trial judge in disallowing it.
For the reasons herein assigned, the judgment appealed from is amended only insofar as (1) to strike therefrom all reference to a plea of prescription as to land sold by Ulyssia Landry, wife of Louis Robert Webre, and (2) to sustain the plea of ten years prescription under LSA-C.C. art. 3544 instead of the plea of prescription of five years under LSA-C.C. art. 3542 as it relates to the land sold by Louis Robert Webre to defendants. As thus amended the judgment appealed from is affirmed. It is ordered that this suit be remanded for further proceedings on the issues still pending and not disposed of herein. Plaintiffs-appellants are cast to pay all costs of this appeal.
Amended, affirmed and remanded.